NORTHWESTERN NATIONAL BANK OF SIOUX FALLS,
Appellant

v.

DANIEL, et al., Respondents

(127 N.W.2d 714)

(File No. 10085.  Opinion filed April 21, 1964)

**Robert R. Spencer,** Madison, for Plaintiff-Appellant.

**Frank L. Farrar,** Atty. Gen., Pierre, **J. H. Lammers,** State's Atty., Madison, for State of South Dakota, Respondent.

**L. F. Ericsson,** Madison, for K. J. Daniel, Respondent.

**Oren P. Coler,** Chamberlain, for Gerhard G. Lembcke, Intervener.

HANSON, J. Mrs. Dana O. Lembcke died leaving two certificates of deposit payable to "Mrs. Dana O. Lembcke or P.O.D. Dr. K. J. Daniel." In this action to quiet title the executor of decedent's estate appeals from an adverse judgment decreeing Dr. K. J. Daniel to be the sole owner of such certificates.

The isues were submitted to the trial court on a brief statement of stipulated facts. It appears therefrom that Mrs. Lembcke, a resident of Lake County, died testate on July 12, 1961. Shortly after her death two certificates of deposit in the amounts of $9,000 and $500 were found in her safety deposit box in the Madison Branch of the Northwest Security National Bank of Sioux Falls. Both certificates had been issued by the bank on deposits of money by Mrs. Lembcke. Both were dated January 3, 1961 and were payable in form to "Mrs. Dana O. Lembcke or P.O.D. Dr. K. J. Daniel or order" 12 months after date. The following statement was printed on the face of each certificate: "This Bank is prohibited by Federal Law from paying this deposit in whole or in part before its maturity, except in cases of emergency, and from paying interest after maturity."

It was customary for Mrs. Lembcke to deposit various sums of money in the Madison bank. On such occasions new certificates of deposit would be issued. As far back as 1955 all of such certificates were made payable to "Mrs. Dana O. Lembcke, P.O.D. Dr. K. J. Daniel." At all times it was the intent of the issuing bank and Mrs. Lembcke that the letters "P.O.D." meant "payable on death."

The defendant, Dr. Daniel, is a brother of decedent. Since 1957 he had authority to enter decedent's safety deposit box, but the records of the bank indicate he never exercised that authority. Mrs. Lembcke's will gave Dr. Daniel a specific legacy of $500 and named him as residuary legatee in the event decedent's children could not be found. Other surviving heirs and the extent of decedent's other property, if any, is not shown.

The issue is whether the certificates of deposit are the property of Dr. Daniel as third party beneficiary of contracts entered into between Mrs. Lembcke and the bank or whether the same are assets of decedent's estate by reason of their testamentary nature.

■ ■ In general "a will is a declaration of the testator's intention as to what shall take place after his death in reference to property left by him. One distinguishing feature of such an instrument is that it has no binding effect during the life of the testator, and is intended to operate only upon and by reason of his death. A will does not confer any present right at the time of its execution, and nothing vests by reason for such an instrument during the life of the testator. Until the death of the maker it is ambulatory and revocable." 57 Am.Jur., Wills, § 15, p. 48. On the other hand, an otherwise valid contractual instrument is not rendered testamentary merely because it provides for the payment of money or the transfer of property at or upon death of the maker, donor, or obligor. If such an instrument vests an enforceable interest in the other party, in praesenti, it is not testamentary. See Anno. "Provision for Performance After Death 1 A.L.R.2d 1181." This distinguishing feature is otherwise expressed on 1 Page on Wills (Bowe-Parker Revision) § 6.1, p. 218 as follows: "There has developed in the law a very real distinction between testamentary dispositions and transfers and inter vivos transactions * * * An inter vivos transfer or transaction requires that some interest or control, however small, be surrendered and that some right in another party come into being at the time of the transaction. If a purported inter vivos conveyance has no effect whatsoever until death and involves absolutely no surrender or divestiture of control, use, power or interest in the property involved, and creates no present duty or liability upon the maker and no rights in others, there exists no reason to consider it as inter vivos for it squarely meets the very definition of testamentary disposition and ought to come under the requirements of the statute of wills."

In Barbour v. First Citizens Nat. Bank of Watertown, 77 S.D. 106, 86 N.W.2d 526, this court recognized the contract theory as one method of giving effect to a joint bank account. The court said:

> "The contract originates with the deposit of funds in a bank. A creditor-debtor relationship results governed by the contract. Flaherty v. Bank of Kimball, 75 S.D. 468, 68 N.W.2d 105. The depositor may direct the manner in

which the funds shall be paid. He may accordingly establish a joint account in the name of himself and another payable to either or their survivor. In that event the relationship is in the nature of a contract for the benefit of a third party. Hawkins v. Thackston, 224 S.C. 445, 79 S.E.2d 714."

However, that case involved a joint bank account payable in form to the depositor or another with right of survivorship. The establishment of the account in such form ostensibly gave the donee depositor a present interest therein with authority to make withdrawals during the lifetime of the donor depositor. The bank was furthermore statutorily authorized by SDC 6.0414 to pay either or the survivor of the joint account and was protected against liability in doing so. None of those features applies to the certificates of deposit in question.

SDC 1960 Supp. 6.0414 provides: "Whenever a deposit has been made or shall hereafter be made, in any bank in the names of two or more persons, payable to any of them, or payable to any of them or the survivor of them, such deposit or any part thereof, or any interest or dividend thereon; may be paid to any one or more of said persons whether the others be living or not; and the receipt or acquittance of the person or persons so paid shall be a valid and sufficient release and discharge to the bank for any payment so made." The certificates of deposit do not come within the purview of such statute. They were not issued on a deposit made in the names of two or more persons payable to either or any of them or the survivor of them. On the contrary, the certificates were singularly payable to Mrs. Dana O. Lembcke during her lifetime and on her death to defendant. As the Nebraska court concluded our joint deposit statute contemplates "the conveyance of a present interest in the deposit, although the actual enjoyment thereof by one or more of the joint payees may be postponed until the death of one of the named payees." Young v. McCoy, 152 Neb. 138, 40 N.W.2d 540.

The words "payable on death" are clearly testamentary in character. Payable in such form the certificates conveyed no interest in praesenti to defendant. There was no joint ownership or control created or vested during Mrs. Lembcke's lifetime

and no divestiture of control, use, or interest until her death. Until then they were ambulatory and revocable. Because of their testamentary character the certificates of deposit constitute an invalid attempt to transfer property at death without conforming to the statute of wills. This was the conclusion reached in the only two comparable cases coming to our attention. In Re Garvin's Estate, Ohio Prob., 175 N.E.2d 551 and Young v. Mc-Coy, 152 Neb. 138, 40 N.W.2d 540. See also Geisel v. Burg, 283 Mich. 73, 276 N.W. 904, Onofrey v. Wolliver, 351 Pa. 18, 40 A.2d 35, 155 A.L.R. 1074, and Powell v. Powell, 222 Ark. 918, 263 S.W.2d 708. Cases involving United States government bonds payable in form to one person and upon his death to another are not considered pertinent as they involve the application and supremacy of Federal law. See Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180, and annotations on the subject in 131 A.L.R. 967, 155 A.L.R. 174, and 161 A.L.R. 304.

Reversed.

All the Judges concur.